# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

JUSTIN DOUGLAS HOLMAN,    )
            )
      **Plaintiff,**    )
            )    **Civil Action No. 2:11-CV-00015**
**v.**          )    **Judge Wiseman/Knowles**
            )
**MICHAEL J. ASTRUE,**    )
**Commissioner of Social Security**    )
            )
      **Defendant.**    )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his application for Supplemental Security Income ("SSI") on

July 24, 2007, alleging that he had been disabled since July 1, 2007, due to leg injuries, social

anxiety, and emotional and mood disorders. *See, e.g.,* Docket No. 11, Attachment ("TR"), pp.

13, 104. Plaintiff's application was denied both initially (TR 41) and upon reconsideration (TR

42). Plaintiff subsequently requested (TR 54) and received (TR 63) a hearing. Plaintiff's

hearing was conducted on October 20, 2009, by Administrative Law Judge ("ALJ") James A.

Sparks. TR 27. Plaintiff and Vocational Expert, Dr. Ernest Brewer, appeared and testified. *Id.*

On January 7, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR

22. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since July 24, 2007, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: osteoporosis, knee osteoarthritis, status post a left femoral shaft fracture and a right tibia/fibula fracture, a depressive disorder, social phobia and alcohol dependence (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can stand or walk for six hours per eight-hour workday and can sit for six hours per workday. He can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember and carry out short, simple tasks and can maintain attention to sufficiently complete simple tasks without the need for special

supervision or more than usual and customary work breaks. He needs a flexible work schedule and can tolerate non-intense interactions with co-workers, supervisors and the general public. The claimant's supervision should be tactful and supportive and changes in the work environment should be introduced gradually. The claimant may need assistance with long-term goals and can only read at a fifth grade level.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 3, 1963 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. The claimant has no skills that would transfer to other work and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 24, 2007, the date the application was filed (20 CFR 416.920(g)).

TR 15-21.

On February 16, 2010, Plaintiff timely filed a request for review of the hearing decision.

TR 7-9. On January 4, 2011, the Appeals Council issued a letter declining to review the case

(TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This

civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) rejecting the opinion of treating physician Dr. Melvin Blevins; and 2) improperly evaluating Plaintiff's education to assess disability. Docket No. 14.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1.  Weight Accorded to Physician Opinions**

Plaintiff argues that the ALJ erred in rejecting Dr. Blevins' opinion because Dr. Blevins personally examined Plaintiff and his findings are consistent with Plaintiff's medical history. Docket No. 14.  Plaintiff specifically contends that the ALJ's finding that Dr. Blevins' report was inconsistent with the medical evidence of record was erroneous because the lung problems on which Dr. Blevins relied had previously existed among Plaintiff's ailments.  *Id.*  Plaintiff additionally contends that x-rays from 2008 and 2009 show that "nearly a year after [Plaintiff's leg] injury, [he] was still to watch his activity and continue his brace and stimulator."  *Id.* Plaintiff contends that Dr. Blevins opinion is consistent with the evidence of record and should have been accepted by the ALJ.  *Id.*  As support for his contention that he is disabled, Plaintiff notes that the VE testified that Plaintiff would be unable to work if found to be restricted as Dr. Blevins had opined.  *Id.*

Defendant responds that, after considering all of the relevant factors enumerated in the Regulations, the ALJ properly discounted Dr. Blevins' opinion relative to the opinions of other physicians.  Docket No. 15.  Defendant highlights that Dr. Blevins only examined Plaintiff one time, and that that was at the request of Plaintiff's attorney specifically to assess his physical ability to perform work-related activities.  *Id.*  Defendant maintains that the lung condition on which Dr. Blevins based his opinion was not mentioned by Plaintiff in his hearing testimony and

contradicted the consistently normal findings of repeated lung examinations administered by Plaintiff's treating physician. *Id.* Defendant notes that the record reflects that no other medical source had diagnosed Plaintiff with COPD, and that Plaintiff himself had repeatedly expressly denied experiencing shortness of breath to his treating physician. *Id.* Defendant asserts that, although Plaintiff was hospitalized for nine days in 2007 for cavitary lung lesions, he was treated for community-acquired pneumonia, his condition improved, and he was not referred to a specialist. *Id.* With regard to Plaintiff's leg issues, Defendant maintains that Plaintiff's leg had been noted to be "markedly better" with an "excellent range of motion," and that Plaintiff took only over-the-counter pain medication. *Id.* Defendant argues that the ALJ properly accorded greater weight to the medical opinions of the state agency physicians than to Dr. Blevins' opinion. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

It is undisputed that Dr. Belvins examined Plaintiff on only one occasion, at the request of Plaintiff's attorney, specifically to assess Plaintiff's ability to perform work-related activities. Accordingly, Dr. Blevins is an examining, but not a treating, physician.

Dr. Blevins concluded that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for less than two hours per workday, and sit for about four hours per workday. TR 19, 565-68. Dr. Blevins also opined that Plaintiff would need to periodically alternate sitting and standing; that Plaintiff should elevate his legs during periods of

prolonged sitting; that Plaintiff's pain would frequently interfere with his attention and concentration; that Plaintiff would sometimes need to take unscheduled breaks during the workday; and that Plaintiff might need to miss work more than four days per month. *Id.* Dr. Blevins further opined that Plaintiff was capable of low stress jobs, but that he would likely experience good days and bad days. *Id.* Dr. Blevins found that Plaintiff could occasionally climb and balance, but could never kneel, crouch, or crawl. *Id.* He also found that Plaintiff should avoid even moderate exposure to environmental factors, but opined that Plaintiff did not experience any manipulative, visual, or communicative limitations. *Id.*

The ALJ in the case at bar accorded little weight to Dr. Belvin's opinion because Dr. Blevins did not have a well-established relationship with Plaintiff and because his findings were inconsistent with Plaintiff's objective medical record. TR 19. Specifically, the ALJ explained, "Dr. Blevins only performed one attorney-requested examination on [Plaintiff], and his opinions are completely inconsistent with the remainder of the objective medical evidence and the claimant's own subjective allegations." *Id.*

The ALJ highlighted discrepancies between Dr. Blevins' findings of COPD and the consistently normal lung examinations performed by Dr. McLerran, Plaintiff's treating physician. TR 19, 296, 413-69, 478. Specifically, the ALJ explained:

> Dr. Blevins based some of his limitations upon findings of [COPD]. However, the claimant did not allege any COPD at the hearing, and Dr. McLerran consistently found the claimant had normal lung examinations, as well as a consistently normal gait. Further, Dr. Blevins [sic] opinion is inconsistent with the claimant's statements that he is only taking over-the-counter medications with some relief of his pain.

TR 19, *citing* TR 292-320, 413-69, 470-79.

The ALJ instead accorded considerable weight to the opinions of the Disability Determination Services physicians, Dr. Mary Payne and Dr. James P. Gregory, finding them to be fully consistent with the objective medical evidence. TR 19, 393-98, 510-17. The controlling regulations recognize that "State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medial specialist who are also experts in Social Security disability evaluations." 20 C.F.R. § 416.927(f)(2). Based on the factors outlined in the Regulations, it was proper for the ALJ to accord considerable weight to these opinions.

Because Dr. Blevins only examined Plaintiff one time, at the request of his attorney, specifically for the purposes of determining Plaintiff's ability to perform work-related activities, and because his findings were inconsistent with the records of Plaintiff's treating physician, Plaintiff's medical history, and the medical opinions of Drs. Payne and Gregory, the ALJ properly accorded little weight to Dr. Blevins' opinion. Consistent with the Regulation requirements, the ALJ specifically articulated his rationale for discounting Dr. Blevins' opinion. Plaintiff's argument fails.

## 2. Evaluating Plaintiff's Education

Plaintiff contends that the ALJ erred in evaluating Plaintiff's educational level, which affects the disability determination. Docket No. 14. Specifically, Plaintiff argues that it was improper for the ALJ to consider Plaintiff to have a high school education when Plaintiff testified that he had a high school education that was in special education, as the two are not equivalent. *Id.* Plaintiff further argues that it was improper for the ALJ to proffer, and rely upon, a hypothetical question posed to the VE that assumed a regular high school education. *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In the presence of nonexertional limitations that would preclude the application of the grid regulations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). The ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations that the ALJ finds credible and accepts. *See, e.g., Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

In the case at bar, the ALJ's hypothetical question posed to Vocational Expert, Dr. Ernest Brewer, incorporated Plaintiff's nonexertional limitations, as well as Plaintiff's age, education, work experience, residual functional capacity for carpentry work, and postural limitations. *See* TR 38-39. The ALJ's hypothetical questions posed to the VE and his answers were as follows:

> Q       I'd like you to assume a hypothetical 44-year old person as
>         [INAUDIBLE] with a high school education. This person

can walk, sit and stand six hours total each in an eight-hour day with minimal breaks. This is according to Dr. Gregory. This person can occasionally lift 20 pounds, frequently 10, pain is evaluated in the RFC. This person would have limitations in that he would be able to do short, simple tasks, can maintain without special supervision with breaks, the Claimant needs a flexible work schedule, can tolerate non-intense interaction with co-workers and supervisors, supervision should be tactful, changes should be gradual, would need assistance in long-term goals. This person's grade equivalent is fifth grade reading, pain is evaluated in the RFC. With those limitations could that person return to any of the prior work or perform any jobs in significant numbers in the region?

A    He could not return to his previous work activity, Your Honor, however he should be able to perform work in the areas of hand packaging type jobs with a sit/stand option. In Tennessee there's approximately 3,900 jobs and approximately 90,000 in the national economy. There's also jobs in the –

Q    And what kind of jobs were those?

A    Hand packaging. There's also jobs in the areas of laundry folder. There's approximately 1,800 jobs in Tennessee with a sit/stand option, approximately 125,000 in the national economy. There's also jobs in the areas of inspector/grader type jobs. In Tennessee there's approximately 2,550 jobs with a sit-stand option and approximately 97,000 in the national economy. These are some examples of jobs that would accommodate the limitations.

TR 39.

The ALJ also elicited the following testimony from the VE:

Q    You've heard the Claimant's testimony. If his testimony [is] given full credibility would he be able to perform any of the above jobs or any jobs in significant numbers?

A    No, Your Honor.

14

*Id.*

In response to the ALJ's last question quoted above, the VE acknowledged hearing Plaintiff's testimony at the hearing.  *Id.*  Plaintiff testified regarding his special education, and his lack of ability to read, write, and spell.  TR 33-34.  Prior to answering the ALJ's hypothetical questions, therefore, the VE was aware of Plaintiff's special education.  Moreover, the ALJ's hypothetical questions specifically noted that the hypothetical claimant had a fifth grade reading level and had limitations including being able to do only short and simple tasks, needing a flexible work schedule, being able to tolerate only non-intense interaction with co-workers and supervisors, needing tactful supervision and gradual changes, and needing assistance with long-term goals.  *Id.*

The ALJ's hypothetical question accurately represented Plaintiff's limitations that he accepted as credible, both exertional and nonexertional.  Because the ALJ's hypothetical question accurately represented Plaintiff's limitations, the ALJ properly relied on the VE's answer to the hypothetical questions to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim on this point fails.

With regard to Plaintiff's assertion that the ALJ's mischaracterization of his education affected his disability determination, the ALJ, in his decision, expressly states, "the claimant reported a history of special education classes," and "[t]he claimant's test scores further revealed that he was reading at a fifth grade level."  TR 19.  Accordingly, the ALJ's decision reveals that he was aware that Plaintiff had been in special education classes, and that Plaintiff tested at a

fifth grade reading level. Additionally, the ALJ stated:

> As for the opinion evidence, on October 17, 2007, J. Killian, M.S., the disability examiner, opined that the claimant had a fifth grade reading ability but sufficient memory, concentration and reasoning to perform simple, one to two step activities and many compound activities. The claimant could also relate well to others and had no limitations with adaptability (Exhibit 10F). The undersigned finds this opinion to be fully consistent with the objective mental health findings of record and the claimant's lack of current mental health treatment, and gives them great weight. However, when *giving the claimant the full benefit of the doubt*, specifically with respect to his later complaints of social avoidance, the undersigned also fully accepts all of the additional limitations found by the November 9, 2007 opinion of a Disability Determination Services' physician (Exhibit 14F).

TR 20. (Emphasis added.)

There is no evidence to support Plaintiff's contention that the ALJ's mischaracterization of Plaintiff's education in any way affected his disability determination. To the contrary, the ALJ's decision discusses the relevant objective and testimonial evidence, specifically addresses Plaintiff's exertional and nonexertional limitations, expressly acknowledges Plaintiff's history of special education classes, and expressly acknowledges Plaintiff's challenges. TR 19-21. Plaintiff's argument, therefore, fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.



E. CLIFTON KNOWLES
United States Magistrate Judge